# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2960-20

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

L.R.,

     Defendant,

and

L.S.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF M.L.R.,
a minor.

_____

Submitted May 31, 2022 – Decided June 16, 2022

Before Judges Mayer and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FG-20-0022-20.

Joseph E. Krakora, Public Defender, attorney for appellant (Deric Wu, Designated Counsel, on the brief).

Matthew J. Platkin, Acting Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; John J. Lafferty, IV, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Noel C. Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant L.R. (Leo)[1] appeals from a June 2, 2021 judgment of guardianship after a trial terminating parental rights to his son, M.L.R. (Mark), born January 15, 2019.[2] Defendant contends plaintiff New Jersey Division of Child Protection and Permanency (Division) failed to make reasonable efforts to provide him with services, including paternity testing. We disagree and affirm.

---

[1] We use initials and pseudonyms to protect the family's identity. R. 1:38-3(d)(12).

[2] Mark's biological mother has not appealed termination of her parental rights.

We recite the facts from the testimony adduced during the two-day guardianship trial. The following witnesses testified at trial: Madeline Mentor, an adoption case manager for the Division; M.T. (Mary), Mark's resource parent; and Dr. Elizabeth Stilwell, the Division's expert psychologist.

Mark's biological mother admitted using drugs during her pregnancy. The hospital where Mark was born had concerns regarding the biological mother's mental health and drug use. At birth, Mark tested positive for PCP and the Division became involved. A week after his birth, the Division placed Mark in a resource home with Mary and her family, where he continues to reside. Mary and her family plan to adopt Mark.

Mark's biological mother did not list a father on the child's birth certificate. However, she believed Leo was Mark's father and so informed the Division. Mark's mother had no information regarding Leo's whereabouts or how to contact Leo.

On February 11, 2020, the Division filed a guardianship complaint seeking to terminate Leo's parental rights. In a February 26, 2020 order, the Family Part judge directed the Division to locate Leo and serve him with the complaint or, alternatively, submit an affidavit of diligent inquiry. The judge issued two subsequent orders requiring the Division to find Leo and effectuate

3

service of the guardianship action. However, the Division only had a telephone number for Leo's sister and efforts to contact Leo through his sister were unsuccessful.

On August 27, 2020, Leo telephoned Mentor, the Division's assigned case manager, and agreed to meet with her the next day. Leo declined to provide his home address but arranged to meet Mentor at a drug store in East Orange, New Jersey. At that meeting, Mentor served Leo with the guardianship complaint. As part of this meeting, Leo agreed to submit to a paternity test and, if confirmed to be Mark's father, participate in the Division's offered services.

After the initial meeting with Leo, Mentor explained he was "in and out of jail," and she had no current address or telephone number to contact him regarding paternity testing, evaluations, or services. Mentor sent a letter to Leo at an address he provided regarding a scheduled paternity test, but Leo failed to appear.[3] When Mentor telephoned the number Leo provided, no one answered.

In October 2020, the Division learned Leo was incarcerated. However, Leo was released from jail within a few days. After his release, Leo failed to provide updated contact information for the Division to arrange services and a paternity test.

---

[3] The address Leo provided was his grandfather's retirement facility.

A-2960-20

Leo returned to prison in November 2020. During this period of incarceration, the Division scheduled several paternity tests for Leo, but the test providers had limited access to the prison due to the COVID pandemic.[4] Following the judge's order, the Division rescheduled a paternity test for March 31, 2021. However, Leo was released from jail the day before this scheduled test. Upon his release, Leo again failed to provide updated contact information to the Division.

Mentor had no contact with Leo after March 2021, and Leo's whereabouts remained unknown to the Division. Mentor previously gave her contact information to Leo, and the information remained unchanged through the date of the guardianship trial. Except for one telephone call in August 2020, Leo never contacted Mentor.

The guardianship trial proceeded on June 1 and June 2, 2021. As of the trial date, Leo had not submitted to a paternity test. Neither Mark's biological mother nor Leo appeared at trial.

---

[4] While in jail, Leo appeared via Zoom for case management conferences with the court and his assigned counsel on February 16 and March 24, 2021. During these proceedings, the judge again ordered paternity testing and directed the prison to cooperate with the Division's scheduled testing.

A-2960-20

Mentor testified regarding her first and only meeting with Leo. According to Mentor, Leo admitted knowing Mark's biological mother but did not know about the pregnancy or the birth of a child. Mentor also explained the difficulty the Division experienced in arranging for paternity testing while Leo was incarcerated due to COVID restrictions imposed by the prison. These restrictions and Leo's failure to provide contact information precluded the Division from providing a psychological evaluation and services so Leo could achieve the skills necessary to parent Mark.

Mentor also testified regarding the Division's efforts to locate relatives who might be willing to care for Mark. Prior to the guardianship trial, the Division contacted Mark's maternal great-grandfather, grandmother, and aunt about possible placement for the child. All three relatives declined to care for Mark. Thus, Mentor explained the Division ruled out these relatives as possible custodial parents.

Mary, Mark's resource mother, testified she took Mark into her home a week after his birth. Mary is married and has three other children. She described the family's positive interactions with Mark. Mary told the judge the family preferred to adopt Mark rather than pursue kinship legal guardianship.

A-2960-20

Dr. Stillwell testified as the Division's psychological expert.  In March 2021, she conducted a bonding evaluation between Mark and his resource parents.  According to Dr. Stillwell, Mark is "very comfortable" with his resource family,  the resource parents are supportive of Mark, and Mark responds positively to redirection and limits set by his resource parents.

Dr. Stillwell noted Mary and her husband are the only parental figures Mark has known since his birth.  She opined removing Mark from his resource parents would be "very disruptive" and "very harmful."  If Mark were to be removed from their custody, Dr. Stillwell explained Mark could suffer behavioral regression and language delays.

At the conclusion of the testimony, the judge rendered an oral decision terminating Leo's parental rights.  The judge found "by clear and convincing evidence each of the four prongs of N.J.S.A. 30:4C-15.1" were satisfied by the Division.   The judge further determined the testifying witnesses were "particularly credible on the areas that they testified to."

Regarding termination of Leo's parental rights, the judge stated, "[i]n spite of numerous efforts to have [Leo] do a paternity test, [Leo] has never been able to make that happen; circumstances being that he's been . . . often in jail.  For whatever reason, whether it's the jail's getting in the way, but up until today he

A-2960-20

hasn't even appeared at trial." The judge found Leo had been "in and out of jail throughout the last two years" and "never demonstrated any ability to raise this child for whatever reason, perhaps mental health issues. [Leo] has not demonstrated any significant interest in raising the child."

Based on Mentor's testimony, the judge found "the Division has made more than reasonable efforts to find [Leo] and engage him. But they have not met with success." The judge noted Leo never provided the Division with a permanent address or valid contact information. The judge further explained "the Division has made reasonable efforts to identify a father by attempting to have the mother identify a possible father. And [the biological mother] specifically suggested the father was [Leo]."

Regarding the Division's efforts to provide services to Leo, the judge found "the Division has, through the course of this case, made sincere and diligent efforts to engage . . . [Leo] in services, such as psychiatric evaluations, visitation, and efforts to obtain records of mental health treatment." However, without signed releases to obtain Leo's medical information, the judge explained the Division "didn't even get to square one . . . ." Thus, the judge determined "the Division's reasonable efforts . . . have been to no avail."

A-2960-20

On appeal, Leo contends the Division's failure to identify Mark's father prior to trial was not in the child's best interest. He also claims the Division failed to demonstrate reasonable efforts to determine paternity or provide him with services. We reject these arguments.

Our review of the Family Part judge's decision is limited. We defer to the expertise of Family Part judges. Cesare v. Cesare, 154 N.J. 394, 413 (1998). We are bound by a judge's factual findings so long as the findings are supported by sufficient credible evidence. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007). "[W]e [also] rely on the trial court's acceptance of the credibility of the expert's testimony and the court's fact-findings based thereon, noting that the trial court is better positioned to evaluate the witness' credibility, qualifications, and the weight to be accorded [his or] her testimony." In re Guardianship of D.M.H., 161 N.J. 365, 382 (1999).

Leo challenges the judge's findings regarding the third prong of the best interests tests. N.J.S.A. 30:4C-15.1(a)(3). Having reviewed the record, we are satisfied the judge's factual findings under all four-prongs, including the third prong, were fully supported by the record and, therefore, the judge properly terminated Leo's parental rights.

9

Under the third prong of the best interests test, the Division is required to make reasonable efforts to provide services to parents. N.J.S.A. 30:4C-15.1(a)(3). Here, the Family Part judge entered multiple orders for Leo to submit to paternity testing to confirm his biological relationship to Mark. Leo participated in two case management conferences, on February 16, 2021 and March 24, 2021[5], during which Leo, his counsel, and the judge discussed paternity testing. At the February 16, 2021 case management conference, the judge informed Leo "[i]f you're not the father, obviously, you don't belong in the case. But, if you are the father, then we have to work with you, and see what happens." Leo responded, "Okay." During the same case management conference, Leo's attorney told the judge that Leo "does expect that the paternity test will confirm that he is the father of the child" and was "waiting for the results of the tests to move forward."

It is clear from the record Leo knew as early as August 2020 he could be Mark's father. Despite multiple court orders compelling paternity testing and Leo's attendance at two case management conferences, during which paternity

---

[5] The record contains a "certification of lost verbatim court record" from the Union County Transcript Office regarding the court conference on March 24, 2021. According to this certification, the court recording on that date was "blank."

A-2960-20

testing was addressed, Leo never made any effort to submit to a paternity test on his own or contact the Division to pursue a paternity test. Although Leo expressed his willingness to submit to paternity testing to the Division's case manager and the Family Part judge, he failed to keep the Division apprised of his whereabouts so testing could be completed. Leo's failure to provide his contact information resulted in the Division's inability to schedule a paternity test and provide services.

In reviewing the record, Leo chose to evade his parental responsibilities regarding Mark based on his refusal to submit to a paternity test to confirm parentage. The failure to acknowledge parentage to provide even minimal parenting to Mark constitutes harm sufficient to terminate Leo's parental rights. See D.M.H., 161 N.J. at 379 (citing In re Guardianship of K.H.O., 161 N.J. 337, 352-54 (1999)).

On this record, we are satisfied the Division made reasonable efforts to provide paternity testing for Leo. Due to the COVID-19 pandemic, the prison declined to allow the test administrator to enter the facility and perform the scheduled the test. Because he participated in at least two case management conferences regarding the guardianship litigation, Leo knew the Division scheduled paternity tests while he was incarcerated but the prison refused to

A-2960-20

allow the testing. Even after his release from prison on March 30, 2021, Leo failed to contact the Division to schedule a paternity test or seek a paternity test on his own. Leo had more than ample time after his release from jail until the start of the guardianship trial on June 1, 2021 to submit to a paternity test but failed to do so.

Unlike the father in N.J. Div. of Youth & Fam. Servs. v. I.S., 202 N.J. 145 (2010), Leo did not actively seek services from the Division to learn how to parent. On the contrary, Leo avoided paternity testing which would have established parentage and allowed the Division to provide the necessary services.

Contrary to Leo's argument, the Family Part judge did not cite incarceration as a basis for terminating his parental rights. See N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 555 (2014) (holding "incarceration alone is insufficient to prove parental unfitness or abandonment and terminate parental rights"). Rather, Leo's own failure to contact the Division after being released from prison and provide current contact information to facilitate paternity testing and other services resulted in the termination of his parental rights. In fact, if Leo had appeared at the guardianship trial, the judge stated he would have ordered a paternity test at the courthouse to conclusively determine

12

parentage. Under these circumstances, Leo has only himself to blame for the termination of his parental rights.

As we have stated, "[k]eeping [a] child in limbo, hoping for some long term unification plan, would be a misapplication of the law." N.J. Div. of Youth & Fam. Servs., v. A.G., 344 N.J. Super. 418, 438 (App. Div. 2001). Leo failed to address the issue of paternity. Had Leo made any effort to submit to a paternity test, even on the day of trial, and affirmatively seek to establish a meaningful parent-child relationship, the Division would have provided the services needed for Leo to parent Mark.

After reviewing the record, we find no factual or legal error in the judge's termination of Leo's parental rights. We are satisfied the Family Part judge's decision is overwhelmingly supported by substantial credible evidence in the record. See N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13